IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

PATRICE SMITH                                                                                       PLAINTIFF

v.                                           No. 4:05CV01712 JLH

CITY OF LITTLE ROCK                                                                          DEFENDANT

## OPINION AND ORDER

Patrice Smith brought this suit against the City of Little Rock alleging unlawful race discrimination, sex discrimination, harassment, and retaliation in violation of Title VII. The City has now moved for summary judgment. For the following reasons, that motion is granted.

A court should grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis of its motion and identifying the portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Group Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753, 763 (8th Cir. 2003). When the moving party has carried its burden under Rule 56(c), "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting FED. R. CIV. P. 56(e)). The

nonmoving party sustains this burden by showing that "there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511. When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2552. In deciding a motion for summary judgment, the Court must view the facts and inferences in the light most favorable to the party opposing summary judgment. *Boerner v. Brown & Williamson Tobacco Corp.*, 260 F.3d 837, 841 (8th Cir. 2001) (citing *Rabushka ex rel. U.S. v. Crane Co.*, 122 F.3d 559, 562 (8th Cir. 1997)). If the evidence would allow a reasonable jury to return a verdict for the nonmoving party, summary judgment should be denied. *Derickson v. Fid. Life Ass'n*, 77 F.3d 263, 264 (8th Cir. 1996) (citing *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510).

The Eighth Circuit has said "that 'summary judgment seldom should be granted in discrimination cases where inferences are often the basis of the claim.'" *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1024 (8th Cir. 2004) (quoting *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999)); *see also Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000). *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J., dissenting).

### I.

The following facts are undisputed. Smith was employed as a police captain in the Little Rock Police Department. The police department chain of command, from top to bottom, is chief of police, assistant chief, captain, lieutenant, sergeant, and police officer. There are nine captains in the police department, each of whom is in charge of a division. During the time period relevant to

this lawsuit, Carlos Corbin was an assistant chief of police and Smith's immediate superior. Lawrence Johnson was the chief of police from March 1, 2000, until his retirement on January 1, 2005.

The several incidents of which Smith complains happened between early April 2004 and January 2005. The first incident occurred when the police department held one of its monthly COMPSTAT meetings in early April 2004. Johnson had introduced COMPSTAT – an acronym for computerized or comparative statistics – during his tenure as chief of police. COMPSTAT was an approach to crime reduction involving the use of statistics to detect patterns of crime and identify the problem areas demanding the most attention. Each captain would present at the monthly COMPSTAT meetings both a review of crime statistics in the particular area under that captain's command and a discussion of what the captain had done in the preceding month to address problem areas. Before the COMPSTAT meeting in early April, Smith asked Johnson if she could give her presentation last. Johnson agreed. After Smith's presentation, Johnson made a comment that "gremlins must have eaten [Smith's] slides."

Later that month, Smith received a written reprimand from Corbin dated April 13, 2004. The letter stated that the discipline was for violations of police regulations by Smith discovered as a result of an internal investigation begun in 2002. A written reprimand is, next to an oral reprimand, the second mildest form of discipline. A letter of reprimand does not result in the loss of any compensation or benefits and does not negatively impact an employee's ability to be considered for promotion. Smith wrote a letter of rebuttal dated April 29, 2004, in response to the letter of reprimand. In that letter, Smith admitted that she violated police regulations but asserted that the letter of reprimand was not in line with the City's policy of progressive discipline and would

adversely affect her ability to compete in the upcoming promotional process to assistant chief. Despite Smith's request, her discipline was not diminished.

The police department held another COMPSTAT meeting at the end of April. Smith was out sick and did not attend that meeting. A few days after the meeting, Johnson transferred Smith from her position as division commander of the downtown patrol to administration. Smith's transfer was effective May 8, 2004.

The next incident arose out of the June 3, 2004, COMPSTAT meeting. In the middle of May 2004, Corbin contacted Smith and directed her to do the overall presentation concerning crime in the whole city during the COMPSTAT meeting on June 3. At that meeting, Smith did not make a presentation. Corbin sent Smith an email asking for a detailed memo explaining why Smith had failed to make her COMPSTAT presentation. On June 4, Smith responded in a memo that "[b]ecause of the stress, humiliation, and belittlement" she had endured surrounding COMPSTAT, she was unable to complete and present the report. Smith was then sent a notice that her superiors were considering serious disciplinary action against her. An administrative hearing was held August 2, 2004. Smith, through her lawyer, requested that she receive no more than a written reprimand for her failure to present at the June 3 COMPSTAT meeting. Smith received a letter of reprimand dated August 18, 2004, from Corbin citing her failure to make the June 3 COMPSTAT presentation as the reason for the discipline.

In October 2004 Smith competed for a promotion to assistant chief. The promotion process consisted of three components – education, assessment center, and accomplishments review – in which the candidates were scored. The three candidates with the highest composite score were eligible for promotion. For the assessment center component, each candidate was given two

exercises to perform and were scored by three assessors. Smith's assessors were Edna Drake, a white female; Daniel Moses, a black male; and Randall Aragon, a white male. For the accomplishments component, each candidate completed a questionnaire and then participated in a structured interview by a group of panelists. Smith's panelists were Wendell Jones, a black male; Mae Kerr, a white female; and Guy Lowes, a white male. Smith's composite score was not high enough to be eligible for promotion. Smith appealed her score in the assessment center component, but an appeals panel upheld the score.

Smith filed two charges with the EEOC regarding the above incidents. Smith filed her first charge of discrimination with the EEOC on July 7, 2004. The boxes for race and sex were checked on that charge. The particulars of the charge mentioned the April letter of reprimand and the May transfer, as well as three prior transfers, as instances of discrimination. The charge also mentioned that Smith complained of discriminatory harassment by the chief and assistant chief to the police department's human resources department. Smith received her right-to-sue letter for her first charge on July 13, 2004. Smith filed her second charge with the EEOC on December 28, 2004. On that charge the boxes for sex and retaliation were checked. The pertinent part of the particulars of that charge stated:

> In October 2004, I learned that I was not selected for the position of Assistant Chief of Police. I have filed previous EEOC Charges of Discrimination and recent internal complaints with Human Resources and our Internal Affairs Division alleging that I have been subjected to harassment, discrimination and an hostile work environment by one of the Assistant Chiefs and the Chief of Police. I am continuing to be subjected to this type of treatment. I was disciplined this year for allegedly committing an infraction that happened four to five years ago. The most recent disciplinary action I received was in August 2004.

On August 11, 2005, Smith received her right-to-sue letter for her second charge.

Subsequent to her filing of the two charges, Sergeant Jill Garrard of the downtown patrol division was ordered not to ride around in a police car with Smith during duty hours. In reaction to that order, Smith filed an internal complaint on January 5, 2005, alleging that she was being harassed. Stacy Witherell, a manager in the City's human resources department, investigated Smith's complaint. After the investigation, Donald Flegal, the director of the City's human resources department, determined that no harassment had occurred. Bruce Moore, the City manager, affirmed Flegal's decision on March 9, 2005.

On November 9, 2005, Smith filed this lawsuit.

## II.

**A.   Disparate Treatment**

The City argues that Smith's claims for race and sex discrimination are time barred. It is undisputed that Smith did not file suit until November 9, 2005, more than 90 days from when she received her right-to-sue letter on July 13, 2004, for her first EEOC charge of race and sex discrimination. Smith's claims are therefore time barred to the extent they rely on any adverse employment actions committed by the defendant prior to July 7, 2004 – the date that Smith filed her EEOC charge. *See Williams v. Thomson Corp.*, 383 F.3d 789, 790 (8th Cir. 2004). Furthermore, Smith did not check the box for race discrimination on her December 28, 2004, complaint and there is no mention of race in the particulars of her charge. Smith cannot therefore bring any claim of race discrimination for an adverse employment action that occurred after July 7, 2004, because Smith failed to exhaust her administrative remedies by giving notice of her claim for race discrimination in her EEOC charge. *Duncan*, 371 F.3d at 1024.

Thus, the only disparate treatment claims that remain are any claims for sex discrimination involving adverse employment actions occurring after July 7, 2004. Smith alleges two such claims. First, Smith alleges that she was not promoted to the position of assistant chief in October of 2004 because of her sex. Smith admitted at her deposition, however, that she did not have any evidence regarding that claim:

> Q. Do you have anybody who could testify, other than yourself, as to any knowledge they might have about these assessors being biased against you?
>
> A. I don't have any documentation, no.
>
> Q. Do you have anybody who could testify, other than yourself, as to any knowledge they might have about these assessors being biased against you.
>
> A. No, I don't.
>
> * * *
>
> Q. Well, did you have – other than the fact that you disagreed with their ratings, was there any other problems with this particular aspect of the promotion process for assistant chief that you felt was discriminatory against females?
>
> A. I think that Chief Johnson, because of – now, Guy Lowe, I don't know what his relationship was with Guy. I knew that he's very good friends with Ms. Kerr, and I know that he's very good friends with – well, he was friends with Mr. Jones. And I think that he may have selected them, and he told them who he wanted.
>
> * * *
>
> So I think he contacted them, and he told them pretty much who he wanted, and what he wanted. And I think they did it.
>
> Q. Do you have any evidence of that?
>
> A. No, I don't. That's why I said 'I think.'
>
> Q. Well, when I say do you have evidence, you don't have any documents that would support that statement?
>
> A. Of course not.
>
> Q. And you don't have any witnesses you could possibly call who could support that statement?

                                          * * *
    A.     No, I don't have any witnesses and I don't think that they'll admit that – any conversation to that effect either.

"[M]ere allegations" alone are not enough to create a triable issue of fact. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). Summary judgment is therefore granted as to Smith's claim that the City did not promote her to the position of assistant chief in October of 2004 because of her sex.

    Second, Smith alleges that she received a reprimand on August 23, 2004, because of her sex. Because Smith has offered no direct evidence of discrimination regarding that claim, the Court employs the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case of sex discrimination by showing that (1) she is a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of unlawful discrimination. *See Rorie v. United Parcel Serv., Inc.*, 151 F.3d 757, 760 (8th Cir. 1998). If the plaintiff does so, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *See id.* If the employer offers such a reason, the plaintiff must then present evidence sufficient to create a fact issue as to whether the employer's articulated reason is pretextual and to create a reasonable inference that sex was a motivating factor. *See id*.

    Here, Smith has failed to make out a prima facie case because she cannot show that she has suffered any adverse employment action. The Eighth Circuit has "held that formal criticisms or reprimands that do not lead to a change in compensation, responsibilities, or other benefits do not constitute an adverse employment action under Title VII." *Powell v. Yellow Book USA, Inc.*, 445

F.3d 1074, 1079 (8th Cir. 2006) (citing *Spears v. Mo. Dep't of Corr. & Human Res.*, 210 F.3d 850, 854 (8th Cir.2000) (en banc)); *Burkett v. Glickman*, 327 F.3d 658, 661 (8th Cir. 2003). While the use of a negative performance review by an employer to alter the terms or conditions of employment to the detriment of the employee can constitute an adverse employment action, *Burchett v. Target Corp.*, 340 F.3d 510, 518 (8th Cir. 2003), Smith offers no evidence of that occurring here. The unrebutted evidence in the record is that a letter of reprimand does not result in the loss of any compensation or benefits. While Smith alleges that the reprimands hurt her chances for promotion to assistant chief, she has no evidence that her reprimands were considered during the promotion process. In fact, Smith admitted that past disciplinary action does not negatively impact an employee's ability to be considered for a promotion within the police department. Summary judgment is therefore granted on Smith's claim involving the August 2004 letter of reprimand.

**B.     Hostile Work Environment**

The City requests summary judgment on Smith's claim for hostile work environment. The Eighth Circuit has defined a claim for hostile work environment as follows:

> A hostile environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Palesch v. Mo. Comm'n on Human Rights*, 233 F.3d 560, 566 (8th Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993) (internal quotations and further citation omitted)). Hostile work environments created by supervisors or coworkers have the following elements in common: (1) the plaintiff belongs to a protected group; (2) the plaintiff was subject to unwelcome harassment; (3) a causal nexus exists between the harassment and the plaintiff's protected group status; and (4) the harassment affected a term, condition, or privilege of employment. *Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1038 (8th Cir. 2005). In addition, for claims of harassment by non-supervisory personnel, [a plaintiff] must show that his employer knew or should have known of the harassment and failed to take proper action. *See Carter v. Chrysler Corp.*, 173 F.3d 693, 700 (8th Cir. 1999). To constitute a hostile work environment, the harassment

must be "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Harris*, 510 U.S. at 21, 114 S. Ct. 367 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)).

*Gordon v. Shafer Contracting Co., Inc.*, 469 F.3d 1191, 1194-95 (8th Cir. 2006). Smith's complaint is unclear as to whether she is alleging sexual harassment or racial harassment.[1] For the reasons given above, however, any claim for racial harassment brought by Smith would be barred for failing to exhaust her administrative remedies. Thus, for purposes of this motion, the Court interprets Smith's claim as one for sexual harassment.

Summary judgment must be granted on this claim because the acts of sexual harassment that Smith alleges, taken together, are not so "severe or pervasive" as to alter the conditions of Smith's employment and create an abusive working environment. Smith complains about Johnson's statement to her at the April 1 COMPSTAT meeting about gremlins eating her slides and Corbin's statement to Phillips that Smith "couldn't seem to get it through her fat stupid head." In addition, Jackson testified that one of Smith's superiors[2] issued the letter of reprimand and transferred Smith because of her sex. But even if those actions were taken because of Smith's sex, such discrete incidents do not as a matter of law constitute "severe or pervasive" harassment. Although Smith may have subjectively perceived them to be so severe as to interfere with her job, objectively they were not so severe and pervasive as to alter the terms and conditions of her employment. *See Arraleh v. County of Ramsey*, 461 F.3d 967, 979 (8th Cir. 2006) ("To demonstrate that harassment

---

[1] Smith makes no mention of her harassment claim in her response brief to the City's motion for summary judgment.

[2] The excerpts of Jackson's deposition submitted to the Court are ambiguous as to whom Jackson is referring.

altered the terms and conditions of one's employment, the conduct alleged must be severe and pervasive, both objectively and subjectively."); *cf. Nitsche v. CEO of Osage Valley Elec. Coop.*, 446 F.3d 841, 843-44 (8th Cir. 2006); *LeGrand v. Res. for Cmty. & Human Servs.*, 394 F.3d 1098, 1102 (8th Cir. 2005) (collecting cases); *Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 935 (8th Cir. 2002). Summary judgment is therefore granted on Smith's hostile work environment claim.

**C.     Retaliation**

Smith alleges that she was investigated and disciplined in retaliation for her internal complaints of harassment and discrimination. To establish a claim of retaliation in violation of Title VII, a plaintiff must show the following elements: "(1) the plaintiff filed a charge of harassment or engaged in other protected activity; (2) the plaintiff's employer subsequently took adverse employment action against the plaintiff; and (3) the adverse action was causally linked to the plaintiff's protected activity." *Cross v. Cleaver*, 142 F.3d 1059, 1071 (8th Cir. 1998). "Once this *prima facie* showing is made, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions, and, if the employer meets that burden, the presumption of retaliation disappears." *Id.* at 1071-72. If the employer does this, the plaintiff has the burden to identify specific facts in the record showing that the offered reason was merely pretextual and that unlawful retaliation was a motivating factor for the decision. *E.E.O.C. v. Kohler Co.*, 335 F.3d 766, 773 (8th Cir. 2003).

The City argues that Smith is barred from bringing any retaliation claims for adverse employment actions occurring before July 7, 2004, because Smith failed to exhaust her administrative remedies. "Exhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices

and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994). Exhaustion of administrative remedies under Title VII requires a claimant to give notice of all claims of discrimination in the initial administrative charge. *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 630-31 (8th Cir.2000). While the Eighth Circuit has stated that a subsequently filed lawsuit need not mirror the administrative charge claim for claim, the complaint can only sweep as broad as the scope of the EEOC investigation which could reasonably be expected to grow out of the charge filed. *Duncan*, 371 F.3d at 1025. Put another way, "[a] plaintiff will be deemed to have exhausted administrative remedies as to allegations contained in a judicial complaint that are like or reasonably related to the substance of charges timely brought before the EEOC," *Williams*, 21 F.3d at 222, unless the allegations grew out of the charge filed with the EEOC. *Wentz v. Md. Cas. Co.*, 869 F.2d 1153, 1154 (8th Cir. 1989). Allegations outside of this scope circumvent the investigative and conciliatory EEOC process and deprive the charged party of notice of the charge. *Duncan*, 371 F.3d at 1025. *See also Kells v. Sinclair Buick-GMC Truck, Inc.*, 210 F.3d 827, 836 (8th Cir. 2000).

It is undisputed that Smith did not check the box for retaliation nor mention retaliation in the particulars of her July 7 charge. While Smith did check the boxes for race and sex discrimination, "it is well established that retaliation claims are not reasonably related to underlying discrimination claims." *Wallin v. Minn. Dept. of Corr.*, 153 F.3d 681, 688 (8th Cir. 1998). As none of the alleged pre-July 7 acts of retaliation grew out of the EEOC charge, they are not actionable.

The only acts of retaliation Smith alleges that are actionable are either those that took place within 180 days preceding December 28, 2004, the date Smith filed her second EEOC charge, *see* 42 U.S.C. § 2000e-5(e)(1) ("A charge under this section shall be filed within one hundred and eighty

days after the alleged unlawful employment practice occurred . . . ."), or those acts that took place after the charge, so long as they are identical to those listed in the charge and the charge stated that the acts of retaliation were ongoing. *Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 674 (8th Cir. 2006). Both the second letter of reprimand dated August 18, 2004, and the decisions by Flegal and Moore in response to Smith's January 2005 complaint about the order given Sergeant Garrard remain as alleged acts of retaliation that are actionable. In light of the Supreme Court's recent decision in *Burlington Northern and Santa Fe Railway Co. v. White*, 126 S. Ct. 2405 (2006), the Court assumes without deciding that Smith can make out a prima facie case of retaliation for both. However, the City has established legitimate, nondiscriminatory reasons for its acts and Smith has failed to create a triable issue of pretext.

Regarding the second reprimand, it is undisputed that Corbin directed Smith to prepare and present the presentation for the June 3 COMPSTAT meeting, and that she failed to do so. The City asserts that Smith was reprimanded because of her failure to perform these duties. In response, as evidence of pretext Smith points to the fact that the investigation into Smith's failure to deliver the COMPSTAT presentation at the June 3 meeting started on the same day that Corbin and Johnson learned that the City had dismissed Smith's complaint of discrimination and harassment against them. An inference of a causal connection between a protected activity and an adverse employment action can be drawn from the timing of two events, but "temporal proximity alone is generally insufficient to prove pretext." *Arraleh*, 461 F.3d at 977-78. Smith has offered no evidence of pretext other than temporal proximity. Smith has failed to present evidence to show that a genuine issue of fact exists as to whether the City's asserted reason for reprimanding her in August 2004 is pretext for retaliation.

As to Smith's January 2005 complaint, the City asserts that Flegal and Moore legitimately concluded that Smith's harassment complaint was unfounded because they did not believe that Smith was being harassed simply because Sergeant Garrard was ordered not to be in a police car with Smith while on duty. Their decision was made after an investigation by Stacy Witherell. While their decision may have been wrong, there is no evidence that the decision was made to retaliate against Smith for engaging in protected activity. *Wheeler v. Aventis Pharm.*, 360 F.3d 853, 859 (8th Cir. 2004) ("[The court's] inquiry is not whether [the employer's] decision was correct or wise but only whether [the employer's reason] was the real reason . . . and not a pretext for [retaliation]."). Summary judgment is therefore granted on all of Smith's retaliation claims.

## CONCLUSION

For the foregoing reasons, the City of Little Rock's motion for summary judgment is GRANTED. Document #43. Smith's complaint will be dismissed with prejudice in a judgment entered separately.

IT IS SO ORDERED this 1st day of March, 2007.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE